IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

MARLON WILLIAMS                                                                          PLAINTIFF
ADC # 115400


V.                                      4:07-cv-00792-WRW-JJV


NATHAN JOHNSTON, Deputy, Pulaski County Detention
Facility; PAUL SANCHEZ, Jr., Sgt., Pulaski County
Detention Facility; and KELVIN JOHNSON, Sgt., Pulaski
County Detention Facility[1]                                                            DEFENDANTS


## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge William R. Wilson, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

---

[1] At the hearing and in their Motion for Summary Judgment (Doc. No. 63), the Defendants provided their full and complete names. The Clerk of the Court is directed to correct the docket notations accordingly.

1

the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that he was subjected to excessive force by the Defendants while a pre-trial detainee at the Pulaski County Regional Detention Facility. The Court conducted an evidentiary hearing on November 10, 2009. Following the presentation of witness testimony and documentary evidence, the Court now makes the following recommendations of findings of fact and conclusions of law based upon the preponderance of the evidence:

**I. Facts**

**A. Procedural History**

Plaintiff filed the instant cause of action on September 4, 2007, alleging that he was beaten by the Defendants while in custody on June 26, 2004. Plaintiff's complaint was initially dismissed

by the district court finding that it was filed outside the limitations period. Plaintiff appealed, arguing the limitations period should have tolled because he never received a definitive response from jailers regarding his grievance. The United States Court of Appeals for the Eighth Circuit agreed with Plaintiff, reversed the district court's dismissal, and remanded the case for consideration of the tolling issue. Because Plaintiff made no request for a jury trial, the undersigned conducted an evidentiary hearing on the issue of tolling and considered the merits of the underlying claim.

**B.     Facts**

Plaintiff was initially arrested on December 18, 2003, but was released on bond until March 2004. Since March 2004, Plaintiff has remained incarcerated.

Plaintiff's excessive force claim arises from events which occurred on June 26, 2004. On that date, Defendants Johnson and Sanchez testified that they had received information from a confidential informant that an inmate in Cell 309 had drugs and they went to that cell to perform a search. Defendants entered Plaintiff's cell and announced "shake down." As a part of the search, they ordered Plaintiff to remove his clothing so it could be searched.

Defendants testified that their common practice for searching a cell for drugs consisted of rapid entry into the cell. Defendants further testified that they would not take the time to handcuff the inmate so the inmate would be unable to dispose of any contraband.

During this search, Defendant Sanchez began searching Plaintiff's clothing and effects while Defendant Johnson stood watch over Plaintiff. Defendant Johnson testified that he "saw [Plaintiff] reach behind his back, take something, and stick it in his mouth." Johnson told Sanchez, and Sanchez put his hands on Plaintiff's jaw in an attempt to force the object from Plaintiff's mouth. Plaintiff resisted Sanchez and tried to knock Sanchez's hand from his jaw. A struggle ensued

3

whereby Sanchez grabbed Plaintiff around the torso in an effort to force him down on the bunk. Meanwhile, Johnson radioed for assistance and tried to cuff Plaintiff' hands. Deputy Johnston responded to the call for help and was able to assist the other two officers in restraining Plaintiff.

After the struggle, Defendants realized that Plaintiff had lost consciousness. Fortunately, an Emergency Medical Technician (EMT) was already waiting outside the cell and rapidly began treating Plaintiff. While performing emergency medical care for Plaintiff, the EMT retrieved a small plastic bag containing what appeared to be marijuana from Plaintiff's throat. The EMT then used an ammonia inhalant and revived Plaintiff. Defendants were concerned about Plaintiff losing consciousness and suspected he may have ingested drugs. Thus, they called an ambulance for Plaintiff and he was transported to a local hospital. Hospital personnel pumped Plaintiff's stomach and provided other treatment for a few hours. He was then released back to the detention facility.

On June 30, 2004, Plaintiff submitted a grievance to the detention facility officials (Doc. No. 8). In it, Plaintiff stated that Defendant Sanchez had tried to kill him and then planted drugs on him while he was unconscious. In the detention facility's response dated July 9, 2004, Plaintiff was advised the incident was "under investigation." *Id*. Plaintiff did not appeal the July 9, 2004, response. Plaintiff testified that, based on the response to his grievance, he believed he "had to give them their time."

Plaintiff was later transferred to the Arkansas Department of Correction (ADC) but did not follow the forwarding procedures required for pending grievances. The grievance form states, "If you leave [Pulaski County Regional Detention Facility] prior to receiving an answer to your grievance, you may write us for the official response. You must include a self-addressed stamped envelope to the attention of the grievance officer. . . ." Plaintiff testified that, while he did not

4

follow the grievance procedures regarding transferring inmates, he did ask a grievance officer for an update on the investigation and that another unidentified officer told him the detention facility would forward the grievance response to the ADC "if they got something."

After transferring, Plaintiff testified that "around July 2005" he wrote to the detention facility asking for the results of the internal affairs investigation. Plaintiff did not keep a copy of the letter nor did he receive a response to it. The following month Plaintiff sent letters to at least three attorneys seeking representation in a civil rights action based on the incident; he did keep copies of at least two of those letters. (Plaintiff's Hrg. Exhibits 1-2) Eventually, another inmate advised Plaintiff to proceed with filing his lawsuit without waiting for further response to his detention facility grievance.

Attorney David Bowden testified by telephone on Plaintiff's behalf. Mr. Bowden stated that, at the request of Plaintiff's mother, he met with Plaintiff at the detention facility a few days after the incident to discuss his excessive force claim. Mr. Bowden testified that he observed some bruising to Plaintiff's forearm and the right side of his face. He took some photographs of Plaintiff and described the bruising he observed as "not real impressive." Ultimately, Mr. Bowden decided not to take the case. He testified that he recalled having "burned" the photographs to a computer disk before deleting them from his hard drive and mailed them to Plaintiff's mother along with the "close out letter" declining to represent Plaintiff.

## II.     Analysis

### A.     Limitations Period and Tolling

The limitations period for § 1983 actions is the forum state's statute of limitations for personal injury actions. In Arkansas, that limitations period is three years. *Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001).

The facts giving rise to this cause of action occurred on June 26, 2004, and Plaintiff did not file the instant case until well after three years – on September 4, 2007. The defendant has the burden of raising the affirmative defense that a plaintiff's claim is barred by a limitations period. *Reed v. Guard*, 285 S.W.3d 662, 664 (2008). Once it is clear from the face of the complaint that the action is barred by the applicable limitations period, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations is tolled. *Id*.

Defendants argue the limitations period began running when Plaintiff received the response from jailers that his grievance was "under investigation." They further argue that Plaintiff could have appealed the jail's response and his failure to appeal forecloses any tolling issue.

Plaintiff counters that time should be "tolled" while he waited for jailers to definitively answer his grievance. Although jail officials did respond to Plaintiff and stated his grievance was under investigation, it was reasonable for Plaintiff to conclude he was still required to await a more conclusive response.

The very essence of a grievance is to solve problems within jails and prisons. *See Porter v. Nussle*, 534 U.S. 516, 525 (2002)(rationale of PLRA's grievance exhaustion process is to allow prison officials opportunity to review and rectify complaints before inmate is forced to initiate civil rights action). The grievance process is so important, the PLRA requires administrative exhaustion before a § 1983 action may even commence. *See Booth v. Churner*, 532 U.S. 731, 733-34, 740-41 (2001).

Some jurisdictions, applying state law principles, generally toll the limitations period during the pendency of this grievance exhaustion process. *See Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir.2005)(collecting tolling cases in § 1983 cases); *See also* Klebanowki v. Sheahan, 540 F.3d 633, 639 (7th Cir. 2008)(Illinois statute allows for tolling during grievance proceeding). There is no

applicable tolling provision under the Arkansas statutes. Yet, in the absence of a statutory prohibition, Arkansas law permits equitable tolling for a reasonably diligent litigant. *Stracener v. Williams*, 137 S.W.3d 428, 431 (2003). Moreover, "federal courts possess the power to use equitable principles to fashion their own tolling provisions in exceptional situations in which state statutes of limitations eradicate rights or frustrate policies created by federal law." *Rodriguez v. Holmes*, 963 F.2d 799, 805 (5th Cir.1992); *See also Board of Regents of University of State of N.Y. v. Tomanio*, 446 U.S. 478, (1980) (holding that federal courts should not apply state statute of limitations and tolling rules that are "inconsistent with the federal policy underlying the cause of action under consideration") (quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 465 (1975)).

In this case, the detention facility's response that they were investigating the excessive force allegations reasonably led Plaintiff to believe he needed to wait for a more complete response that would be forthcoming.[2] Here, Plaintiff has acted reasonably diligent during the grievance process and principles of equity require at least some tolling while he awaited a definitive answer to his grievance.

While it was reasonable for Plaintiff, as he says, "to give them their time," it was not reasonable to think he could wait forever without legal consequence to his claims. The Court finds that the limitations period tolled during the grievance process; however, tolling ceased when Plaintiff was transferred to the ADC and failed to follow the grievance procedure for transferring

---

[2]Unlike the Arkansas Department of Correction, which addresses the issue of unresolved grievances by a policy which "deems denied" a grievance not responded to by placing the burden on the inmate to further pursue the next step in the grievance policy, there was no evidence presented that the Pulaski County Regional Detention Facility policies place an affirmative duty on the inmate to take responsibility for appealing in the absence of a response. Arkansas Department of Correction Administrative Directive 04-01, AR-835: Grievance Procedure for Offenders.

7

inmates. By failing to comply with the grievance process and not providing a self-addressed, stamped envelope to the attention of the grievance officer, Plaintiff failed to be reasonably diligent and the grievance process reasonably came to an end. Accordingly, the limitations period began running upon his transfer on January 13, 2005. Therefore, Plaintiff's complaint was filed within the three year limitations period.

B.   **Excessive Force Claim**

Although the Court finds that Plaintiff timely filed his Complaint, Plaintiff has not shown any constitutional excessive force violation. The Court recognizes that Plaintiff was a pretrial detainee on June 26, 2004. The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir.2001)("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *See Schoemehl*, 878 F.2d at 1048. The relevant inquiry is whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir.1996).

The evidence clearly shows that while Defendants were conducting a search of his cell for contraband, Plaintiff stuffed a plastic bag of marijuana in his mouth. Plaintiff then fought with the Defendants who were trying to remove the contraband from his mouth. The evidence allows the Court to conclude by a preponderance of the evidence that Plaintiff was rendered unconscious by his own doing when the bag of marijuana blocked his airway and nearly suffocated him.

During the evidentiary hearing Plaintiff did admit he ingested the bag of marijuana; it was

8

the first time Plaintiff revealed this information. This case proceeded upon allegations that Plaintiff was beaten until he became unconscious and that the guards planted "drugs on [his] body while [he] was out." (Doc. No. 8). These allegations are blatantly false by Plaintiff's own admission. Plaintiff's false allegations cause the Court to discredit his testimony and credit the testimony of Defendants relating to the reasonableness of their response.

Giving full credibility to their testimony, the Defendants' response was reasonable considering that Plaintiff was resisting them, attempting to destroy evidence, and potentially overdosing on illegal drugs. In light of the circumstances created by Plaintiff, the force applied by Defendants was reasonable. The extent of the injury inflicted appears to have been caused more by Plaintiff's own actions in attempting to hide or dispose of the contraband than by the force used by the officers. The Court further concludes that the force applied was in good faith to maintain or restore discipline.

After listening to all the testimony and drawing appropriate inferences based on the credibility of the parties and their witnesses, the Court finds that Plaintiff has not shown his constitutional rights were violated by the Defendants. Accordingly, the undersigned recommends that Plaintiff's complaint be dismissed with prejudice.

III. **CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that Plaintiff's complaint against Defendants be DISMISSED with prejudice, and all pending motions be DENIED as moot.

DATED this <u>3rd</u> day of December, 2009.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE